# JOSHUA WAGENSELLER ET AL.
## v.
# BENJAMIN S. PRETTYMAN ET AL.

1. EVIDENCE.—In an original bill appellees were parties complainants and under Sec. 2, Chap. 51, R. S. 1874, they were incompetent to testify. The original bill was amended by striking out the name of one of the complainants and he was made one of the defendants and filed a cross-bill. The testimony of appellees was then admitted. *Held*, that this amendment to the bill did not change in any respect the rights or interests of the parties. Appellees were still testifying in their own behalf to sustain their respective claims, and it was error to admit such evidence.

2. PREPONDERANCE OF EVIDENCE.—As the preponderance of the evidence, especially when the testimony of appellee Prettyman is excluded, is that the money paid for the distillery was the money of G. H. Rupert, for which he should be allowed proper credit, the court erred in finding that the money paid to the government for such distillery was paid out of the funds of C. J. D. Rupert.

3. THE SAME.—The court also erred in decreeing that the estate of G. H. Rupert be charged with the $9,000 notes, etc., as comparatively but a small part of this amount was shown by the evidence to have been received by G. H. Rupert in his lifetime or by his executors since his death, and as a suit is now pending to foreclose the mortgage given to secure these notes, under the circumstances, the court thinks injustice might be done to permit the whole amount of the notes and interest to be charged against the estate.

APPEAL from the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding. Opinion filed February 7, 1883.

Mr. J. W. DOUGHERTY, for appellants; that with the exception of commercial paper, one person can not make another his debtor without his consent, cited Bishop v. O'Connor, 69 Ill. 435.

As to title claims against estates: R. S. 1874, p. 116, § 63.

Mr. B. S. PRETTYMANN and Mr. W. DON MAUS, for appellees; that so long as the United States as purchasers, makes no complaint of want of title, none can be heard from others, cited Wagenseller v. Prettyman, 7 Bradwell, 196; Ralston v. Wood, 15 Ill. 171.

As the original bill and the cross-bill were in effect distinct suits, the testimony of each of appellants was competent to support the bill of the other: Reman v. Buckmaster, 85 Ill. 405.

The Statute of Limitations does not run in favor of a trustee in a suit to recover the trust property: Hancock v. Harper, 86 Ill. 452: Waldon v. Kerr, 88 Ill. 49.

When the prosecution or defense of suits is rendered necessary, naturally and proximately by a breach of contract, or wrongful act, the costs of that litigation reasonably and judiciously conducted incurred or paid are recoverable as part of the damages: 1 Sutherland on Damages, 138, 142, 148; King v. Ward, 77 Ill. 603; Hogan v. Colbert, 17 Mass. 172; Westfield v. Mays, 122 Mass. 100.

The covenantor at law became liable as soon as liability accrued to each one of the sureties, and the measure of damages is the amount of such liability: Sedgwick on Damages, 311, 313; Chase v. Hinman, 8 Wend. 452; Wills v. Pond, 19 Wend. 423; Rockafellow v. Fellows, 8 Cowp. 623; Gilbert v. Minar, 1 Comst. 550.

DAVIS, P. J.    This case was before us at the May term, 1880, and is reported in 7 Bradwell, 192. We then held that there was an entire want of evidence in the record to support the case made by the bill, and reversed the decree and remanded the cause. The case as made by the original bill and the facts then presented by the record, appear fully in the opinion of the court filed in the cause at that term.

On the remanding order of this court being filed, complainants below took leave to amend their bill, and filed an amended bill, averring the solvency of McIntire and that the notes executed by him to Gideon H. Rupert became due before the death of Rupert and might have been collected, and that it was his duty in his lifetime, and of his executor after his death, to proceed to collect the same, but that he and they neglected their duty and failed to collect or try to collect the notes. It further avers the sale, by the executors of the undivided half of said distillery property to said McIntire for $5,000. It

also alleges that Prettyman, as one of the sureties of C. J. D. Rupert, in February, 1875, became liable to pay $20,781.80, on one of said distiller's bonds, and has already paid $3,500.

In a second amended bill filed, it is charged that the rents from July, 1871, to February 19, 1877, amount to $6,700 and that said executors received $1,400 as rents.

A third amended bill was filed, in which, by leave of the court, the name of H. W. Hippin is stricken out as one of the complainants and inserted as one of the defendants, wherever the same occurs in the original bill, and makes the original bill the bill of Prettyman alone. It alleges that Hippin expended $356.50 in employing counsel in defending certain suits.

A cross-bill was also filed by H. W. Hippin repeating the matters and things charged in the original and amended bills, and prays for payment of the money advanced by him, and for general relief.

Appellees filed their answers and amended answers to the several amended bills, and to the cross-bill of H. W. Hippin. They admit the sale by Gideon H. Rupert of the undivided half of said distillery, and that he took McIntire's notes for $9,000, secured by mortgage, and aver that a suit has been instituted to collect them. They also admit that the said executors sold the other half of the distillery to McIntire for $5,000, all of which they have received, and have also received $800 of interest. They deny all other allegations of the several amended bills and of the cross-bill.

Evidence was taken, and Benjamin S. Prettyman and H. W. Hippin were permitted to testify on their own motion and against the objection of appellant, or rather Prettyman was called by Hippin, and testified that the money paid by G. H. Rupert for the distillery premises to the general government was the money of C. J. D. Rupert, and Hippin was called by Prettyman, and testified, among other things, to the payment by him of $314 for attorney's fees and traveling expenses to Springfield, most of which was paid to Prettyman.

By the evidence taken it was shown that John D. McIntire bought of G. H. Rupert, about July, 1871, the undivided half

of the Hamburg distillery for $9,000, for which he gave four notes of $2,250 each, payable in one, two, three and four years, with eight per cent. interest per annum, secured by a mortgage on the purchased property. He rented the other half of the distillery property of G. H. Rupert for five years from same date, and agreed to pay him $1,200 per annum as rent, which leasing was afterward extended for another term of five years. He purchased in April, 1877, of the executors the other half of the distillery for $5,000, which has all been paid to them. One thousand dollars were paid when the purchase was made, $1,000 in May, 1878, and $3,000 in May, 1880. Of interest, $400 was paid in May, 1878, and a little in excess of $300 in May, 1880.

On the hearing, the court below, among other things, found that Gideon H. Rupert, in his lifetime, accepted the trust; that on the 11th of July, 1871, he sold the undivided half of the premises for $9,000 with eight per cent. interest from date, and decreed that his estate should be charged with that sum of money, with the interest from the day of sale to date of decree. The court further found, that after the death of Rupert, his executors, on the 2d of April, 1877, sold the other undivided half of the premises to McIntire for $5,000—$1,000 in cash and $4,000 on a credit with interest from date at ten per cent., and that the principal and interest thus received amounted to $6,000.

The court, among other things, further found, that Benjamin S. Prettyman paid in cash and in services rendered, as one of the sureties on said bonds, $1,000, January 1, 1875, and $3,500 on August 19, 1876, by sale of land, and that he is entitled to interest on the $3,500 from date of payment at six per cent. per annum this date.

That H. W. Hippin paid, September 12, 1873, for the use and benefit of all the sureties $314, and is entitled to six per cent. interest on same to date of decree. That C. J. D. Rupert paid the money alleged to have been paid for the premises known as the Hamburg distillery out of his own funds at time of sale.

That said McIntire paid to C. J. D. Rupert $5,571, to ap-

ply on said $9,000 notes upon the orders of G. H. Rupert, in his lifetime, and that said G. H. Rupert could have collected the whole of said notes in his lifetime, but failed and neglected to do so, and could have disposed of the whole of said trust property and turned it into money in his lifetime. and also that the executors of said Gideon H. Rupert have failed to collect the value of said $9,000 notes on account of the neglect of said Rupert, and that the whole of said notes and interest has been lost to said trust fund, and that said Prettyman, Hippin and said executors are respectively entitled to their respective proportions of said trust fund.

The cause was referred to the Master in Chancery to calculate the interest due on said sums and that he state an account showing the amount and proportion of said funds so in the hands of said executors, to which said parties are entitled, and that he report the same.

The Master reported that he found the purchase of the half of the property for $9,000, with 8 per cent. interest to May 18, 1882, amounted to $16,274. That the purchase of the other half of the property, with interest, at ten per cent. on $4,000, the deferred payment amounted to $1,125.50. That he found the total of the trust fund to be $23,399.50. That he found the amount paid by G. H. Rupert, as one of the sureties, $21,388.64, to be credited to him. That the sum paid by Prettyman, with interest, amounted to $5,706.85, and the sum paid by Hippin with interest, $477.58. He also found that the trust fund would only pay 84 4-6 per cent. and in that proportion there was due to Prettyman $4,840.59 to Hippin $404.65, and to Rupert's executors $18,154.26.

Appellants excepted to the report of the Master, but the court overruled the exceptions and decreed that the executors in due course of administration pay the several sums so found due by the Master. To reverse the decree this appeal was taken.

We think the court erred in permitting Prettyman and Hippin to testify as witnesses, against the objection interposed by the executors. Under the original bill, in which they were parties complainants, they were clearly incompetent

under section 2 of chapter 51 of the Revised Statutes of 1874, which provides, "That no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion, or in his own behalf, by virtue of the foregoing section (section 1, of the act), when any adverse party sues or defends as the trustee or conservator of any idiot, habitual drunkard, lunatic or distracted person, or as executor, administrator, heir, legatee or devisee of any deceased person or as guardian or trustee of any such heir, legatee or devisee, * * ."

Amending the original bill by striking out the name of H. W. Hippin as one of the complainants and making him one of the defendants, and the filing of a cross-bill by him, changed in no respect the rights or interests of the parties. Prettyman and Hippin were still testifying in their own behalf, to sustain their respective claims, while the appellants, by the death of Rupert, were deprived of his rebutting testimony, thus destroying that equality which it was the object of the statute to maintain: Langly v. Dodsworth, 81 Ill. 86; Whitmer v. Rucher, 71 Ill. 411.

The court also erred in finding that the money paid to the government for the Hamburg distillery was paid out of the funds of C. J. D. Rupert. The preponderance of the evidence, especially when the testimony of Prettyman is excluded, is that the money paid for such distillery was the money of G. H. Rupert for which he should be allowed the proper credit.

The court also erred in decreeing that the estate of G. H. Rupert should be charged with the $9,000 notes and eight per cent. interest thereon from July 11, 1871, to the date of the decree, and in approving the report of the Master in Chancery in which the estate is charged with the same, amounting to $16.274, and finding the total amount of the trust fund to be $23,399.50.

Comparatively but a small part of this amount was shown by the evidence to have been received by G. H. Rupert in his lifetime, or by his executors since his death.

J. D. McIntire testified that he had paid to C. J. D. Rupert

on verbal orders of G. H. Rupert on the $9,000 notes, $5,-573.48. This was the only definite and satisfactory evidence of any payment made on such notes. On this amount, G. H. Rupert having used it for his own private purposes, interest at six per cent. per annum could properly be charged against the estate.

It is true McIntire testified that he supposed at the time the notes matured, the money could have been made from his property, outside of his distillery property, at any time until August, 1877, and it is on this evidence that it is claimed that the estate of Rupert is chargeable with the whole sum of $9,000 and eight per cent. interest thereon.

Appellants, in one of their answers, deny that G. H. Rupert, in his lifetime, could have collected the money due from McIntire on these notes, and set up that a suit is now pending to foreclose the mortgage given to secure them, and aver that pending the determination of that suit, they are unable to tell the amount of said trust fund. They failed to introduce testimony of the commencement and pendency of such foreclosure proceedings, but we know from the case having been before us lately and remanded for further proceedings that it is pending and undetermined, and that this litigation can not properly be brought to a conclusion, and the amount of the trust estate determined, until it can be ascertained how much can be realized, if anything, on such mortgages : and as this cause must be remanded we feel that injustice might be done in permitting the whole amount of the $9,000 notes and interest to be charged against the estate, without affording a further opportunity for investigation.

For the errors indicated, which are covered by appellant's assignment of errors, we must reverse the decree and remand the cause for further proceedings.

Decree reversed.